Stella McSPARRAN, Administratrix of
the Estate of Robert G. Weaver,
Deceased

v.

BETHLEHEM–CUBA IRON MINES CO.

Civ. A. No. 25411.

United States District Court
E. D. Pennsylvania.

Dec. 28, 1960.

---

Richter, Lord & Levy, by B. Nathaniel Richter, Philadelphia, Pa., for plaintiff.

Pepper, Hamilton & Scheetz, by Perry S. Bechtle, Philadelphia, Pa., for defendant.

WOOD, District Judge.

Plaintiff brought an action against Bethlehem-Cuba Iron Mines Co. and Frazier-Davis Construction Co., Inc., seeking damages as a result of the permanent injuries and death of Robert G. Weaver. She alleged that the injuries, resulting in his death on December 11, 1957, were caused when he was struck by a piece of steel in a mine shaft due to the joint negligence of both defendants. Subsequently, summary judgment was entered on behalf of defendant, Frazier-Davis Construction Co., Inc., on April 11, 1960, by Order of our colleague Chief Judge J. Cullen Ganey and the case has proceeded against Bethlehem-Cuba Iron Mines Co., hereinafter referred to as "Bethlehem."

Interrogatories were directed to Bethlehem as to statements obtained by them relative to the accident and to which Bethlehem answered giving the names of the witnesses whose statements they had taken.

Plaintiff promptly moved under Rule 34 of the Federal Rules of Civil Procedure, 28 U.S.C.A., for the production of those statements, with supporting affidavit, which alleged *inter alia* that:

"Plaintiff's only information about the happening of this accident comes to her as hearsay reports from others. The entire area and all the equipment in the vicinity of the accident was under the control of the defendant, its agents, servants or employees. Defendant has admitted in answers to interrogatories No. 6(c) that it has obtained statements from seven witnesses whose names are set forth in the attached motion. The plaintiff has no other practicable recourse for obtaining information concerning this accident other than obtaining copies of these statements under the instant motion.

"The plaintiff is dead, and the witnesses have dispersed, and plaintiff has no way of getting this information other than through these statements which are in the possession of defendant."

and concludes by stating:

"In our case, in view of the fact that witnesses have dispersed and that all of this information taken by the defendant by way of statements is in the exclusive possession of the defendant, a sufficient showing of good cause exists for production of documents under Rule 34."

It is immediately obvious that we are faced once again with an interpretation of Hickman v. Taylor et al., 3 Cir., 1945, 153 F.2d 212; Id., 1947, 329 U.S. 495, 67 S.Ct. 385, 91 L.Ed. 451, and Alltmont v. United States, 3 Cir., 177 F.2d 971, 979, November 23, 1949, as amended February 3, 1950. We will make some discussion and possibly repetitious reference to those cases, as well as Reynolds v. United States, D.C.E.D.Pa.1950, 10 F.R.D. 468, 470, reversed on other grounds United States v. Reynolds, 1953, 345 U.S. 1, 73 S.Ct. 528, 97 L.Ed. 727, and Martin v. Capital Transit Co., 1948, 83 U.S.App.D.C. 239, 170 F.2d 811, since plaintiff urges upon us vigorously in support of his position the recent case of

United Air Lines, Inc. v. United States, D.C.Del.1960, 186 F.Supp. 824.

It is apparent that we and our colleagues are continuously confronted with the problems involved and that there is a great difference of opinion among members of the Bar as to the interpretation and rationale in light of the facts of this case and the supporting affidavit. We would say also, parenthetically, that we doubt that there is complete unanimity among the members of our Court.

It will be recalled that in the Alltmont case, supra, Circuit Judge Maris, writing for the Third Circuit, said at page 976 of 177 F.2d:

"* * * He has sought discovery as of right of oral and written statements of witnesses whose identity is well known and whose availability to petitioner appears unimpaired. He has sought production of these matters after making the most searching inquiries of his opponents as to the circumstances surrounding the fatal accident, which inquiries were sworn to have been answered to the best of their information and belief. * * * Petitioner makes no suggestion, and we cannot assume, that the tug owners or Fortenbaugh were incomplete or dishonest in the framing of their answers. * * * We are thus dealing with an attempt to secure the production of written statements * * without any showing of necessity or any indication or claim that denial of such production would unduly prejudice the preparation of petitioner's case or cause him any hardship or injustice. For aught that appears, the essence of what petitioner seeks either has been revealed to him already through the interrogatories or is readily available to him direct from the witnesses for the asking."

We pause here for a moment to compare the facts stated in the affidavit to determine whether they would over-

come any of the objections which we might imply from the language of Judge Maris above stated. Plaintiff makes the bald assertion that "the witnesses have dispersed." Are we to conclude from that that they are unavailable? Are there any facts submitted to us from which we could conclude that the answers to the interrogatories have not given the plaintiff all that he requires to properly prepare his case? Are we to conclude that all the facts which justice requires he should have cannot be obtained by taking depositions?

To go on, Judge Maris says at page 978 of 177 F.2d:

> "In other words he must show that there are special circumstances in his particular case which make it essential to the preparation of his case and in the interest of justice that the statements be produced for his inspection or copying. His counsel's natural desire to learn the details of his adversary's preparation for trial, to take advantage of his adversary's industry in seeking out and interviewing prospective witnesses, to help prepare himself to examine witnesses or to make sure that he has overlooked nothing are certainly not such special circumstances since they are present in every case."

Counsel for plaintiff flies in the face of this very statement, saying that he cannot properly examine a witness until he sees a statement which he gave on a prior occasion. That argument, of course, is clearly answered above.

Plaintiff strongly relies also on the language of the Supreme Court in Hickman v. Taylor et al., supra, quoted at page 975 of 177 F.2d, as follows:

> "We do not mean to say that all written materials obtained or prepared by an adversary's counsel with an eye toward litigation are necessarily free from discovery in all cases. Where relevant and non-privileged facts remain hidden in an attorney's file and where production of those facts is essential to the preparation of one's case, discovery may properly be had. Such written statements and documents might, under certain circumstances, be admissible in evidence or give clues as to the existence or location of relevant facts. Or they might be useful for purposes of impeachment or corroboration. And production might be justified where the witnesses are no longer available or can be reached only with difficulty. Were production of written statements and documents to be precluded under such circumstances, the liberal ideals of the deposition-discovery portions of the Federal Rules of Civil Procedure would be stripped of much of their meaning. But the general policy against invading the privacy of an attorney's course of preparation is so well recognized and so essential to an orderly working of our system of legal procedure that a burden rests on the one who would invade that privacy to establish adequate reasons to justify production through a subpoena or court order. That burden, we believe, is necessarily implicit in the rules as now constituted."

The first portion of the above quotation plaintiff argues vigorously, but we must consider that in the context of the latter portion. We are also impressed in that regard by the language of the case of Martin v. Capital Transit Co., supra [170 F.2d 812], cited in the Alltmont case, supra:

> "Rule 34 authorizes the District Court to order production of documents, papers, etc., upon motion of a party 'showing good cause,' not upon a mere allegation or recitation that good cause exists. The rule contemplates an exercise of judgment by the court, not a mere automatic granting of a motion. The court's judgment is to be moved by a demonstration by the moving party of its

need, for the purposes of the trial, of the document or paper sought."

We turn then to the case of United Air Lines Inc. v. United States, decided by Chief Judge Wright in the District of Delaware. Based on the facts of that case, we agree wholeheartily with his conclusions. The point is, however, that the facts in that case are vastly different than in the case before us and we quote various parts of that decision. For example, Judge Wright says [186 F.Supp. 825]:

"What constitutes a sufficient showing of 'good cause' depends in large part upon the circumstances of each case. This court has taken the position that if the witnesses themselves are available to the party and can be interrogated or examined, there will ordinarily be no occasion for ordering the production of their statements." Reeves v. Pennsylvania R. Co., D.C.D.Del.1949, 8 F.R.D. 616, 619.

and he further says:

"But I don't think this is justification for a rigid rule that the party seeking production must always show that he has been unable to obtain his own statements from the witnesses."

This, we conclude, is the general and correct rule. However, in the case before Judge Wright, as he pointed out:

"There are upwards of 49 witnesses many of whom have testified before three Investigating Boards. These persons are scattered over the United States and probably some of them are outside the territorial limits of the United States. The majority of the witnesses appearing before the Collateral Board were employees of the Air Force or Air Force personnel as is also the case of the witnesses before the Aircraft Accident Investigation Board. No one survived the crash; the planes involved in the collision were demolished and burned. To recon-struct what happened and how this unfortunate accident occurred or the reasons therefor, will require the most thorough and careful marshaling of all available facts. Some minor deviation as to what a witness might have actually observed or what he did, or did not do, at a particular time before the collision may be crucial. A thorough knowledge of what witnesses may have said on other occasions is more important in this case than in the more usual one."

█ Being fully mindful of the purposes of the discovery rules in seeking justice, promoting disclosure and limiting surprise, we are not constrained to rule that the "good cause" provision of Rule 34 is virtually meaningless. We believe it means just what it says and in the absence of stated facts and the lack of general conclusions which would persuade us to believe that with due industry the plaintiff cannot properly prepare his case, he is not entitled to have for his copying statements obtained through proper investigatory endeavor by his adversary. This we feel is in the interests of justice, which must apply both to plaintiff and defendant.

We have examined the cases of Guilford Nat. Bank of Greensboro v. Southern Ry. Co., D.C.N.C.1960, 24 F.R.D. 493, and Brown v. New York, New Haven & Hartford R. Co., D.C.S.D.N.Y.1955, 17 F.R.D. 324, and we find them inconsistent with the ruling laid down by the Third Circuit in the Alltmont case.

█ Counsel has urged upon us to certify this matter under the provisions of 28 U.S.C.A. § 1292(b) (1960 Supp.). We do not think this matter is one which comes within the provisions of that Act.

### Order

And now, to wit, this 28th day of December, 1960, it is hereby ordered that the motion for production of witnesses' statements filed on behalf of plaintiff is denied.